IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JUDITH L. WULF,

    Plaintiff,

vs.             Case No. 09-1348-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.


MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 6, 2009, administrative law judge (ALJ) William H. Rima issued his decision (R. at 8-15). Plaintiff alleges that she has been disabled since June 2, 2006 (R. at 8). Plaintiff is insured for disability insurance benefits through December 31, 2010. Plaintiff also meets the non-disability requirements for disabled widow's benefits; plaintiff must establish that her disability began on or before June 30, 2009 to be entitled to a disabled widow's benefit (R. at 8-10). At step one, the ALJ

found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 11). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disk disease and degenerative joint disease of the spine, and gastroesophageal reflux disease (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining that plaintiff has the RFC to perform the full range of light work (R. at 12, 13), the ALJ found at step four that plaintiff is able to perform past relevant work as a waitress (R. at 14-15). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 15).

**III. Did the ALJ err in his consideration of the opinions of Dr. Miller, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical

evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

Dr. Mary Beth Miller filled out a medical source statement-physical on November 7, 2008 indicating that plaintiff can lift and/or carry only 5 pounds.  Dr. Miller indicated that plaintiff can stand and/or walk for 15 minutes at a time, and for 3 hours in an 8 hour workday.  Dr. Miller further indicated that plaintiff can sit for 30 minutes at a time and for 4 hours in an 8 hour workday (R. at 314).  Dr. Miller also indicated that plaintiff can never climb, stoop, kneel, crouch or crawl, and can only occasionally balance, reach, handle and finger.  Dr. Miller stated that plaintiff is limited due to chronic back pain, chronic joint pain, chronic muscle pain and SOB (shortness of

breath) with COPD (chronic obstructive pulmonary disease). Dr. Miller based her opinions on both clinical findings and physical exams (R. at 315).

The ALJ made the following findings regarding the opinions of Dr. Miller:

> The undersigned has considered opinion evidence of the treating source, Dr. Mary Beth Miller, but does not afford it controlling weight here. Post-hearing, a Medical Source Statement, Physical, completed by Dr. Miller was submitted (Exhibit 11F). Dr. Miller opined the claimant was limited to lifting 5 pounds; standing and/or walking 15 minutes at a time for a total of 3 hours out of an 8-hour workday; sitting for 30 minutes at one time for a total of 4 hours out of an 8-hour workday; along with a number of postural limits. Dr. Miller provided that the basis for her opinion was chronic pain (Exhibit B11F, pp. 1-2). <u>There is little to no objective evidence to support this level of limitation</u>. While it is credible the claimant has pain, <u>nothing in the objective evidence supports pain at a level that would limit the claimant to such a degree</u>. Dr. Miller's opinion is not well supported and is inconsistent with the record as a whole, and her opinion is given little weight.

(R. at 14).

The ALJ also referenced in his decision the diagnosis of fibromyalgia by Dr. Miller. The ALJ stated the following:

> The claimant also alleges an impairment of fibromyalgia. Fibromyalgia has been defined under the criteria of the American College of Rheumatology, as including widespread pain in combination with tenderness in at least 11 or more of the 18 specific tender point sites in muscular tissue. Other symptom variables, which can differ, include sleep disturbance,

7

> fatigue, morning stiffness, anxiety, irritable bowel syndrome, frequent headaches, Raynaud's phenomenon, SICCA symptoms, prior depression, paresthesia, and "pain all over." (1990 Criteria for Classification of Fibromyalgia). The only reference to fibromyalgia in the record is from Dr. Mary Beth Miller, who as part of a physical exam notes that the claimant has "trigger points positive 16/18 fibromyalgia points" (Exhibit 10F, p. 5). <u>Dr. Miller does not provide an actual diagnosis of fibromyalgia</u>, or an explanation of which trigger points are positive, or the basis for her conclusion. <u>There is no testing comprising medical evidence in the record of fibromyalgia</u> nor is there treatment indicating that claimant experiences any functional impairment as a result. No symptom or combination of symptoms by itself can constitute a medically determinable impairment. <u>There must be objective medical evidence of the existence of medical abnormalities</u>. The alleged fibromyalgia is found not to be medically determinable. (Social Security Rulings (SSR) 96-4p).

(R. at 11-12, emphasis added).

Dr. Miller stated the following in his medical record of August 12, 2008: "<u>Positive for Has fibromyalgia</u>" (R. at 307, emphasis added). Subsequently, Dr. Miller's medical records from October 15, 2008 include the following:

> <u>Has been diagnosed with fibromyalgia</u> (R. at 292, emphasis added).
>
> MUSCULOSKELETAL:...and myalgias <u>(multiple areas with dx[1] of fibromyalgia)</u>...(R. at 292, emphasis added).

---

[1]Dx is an abbreviated for diagnosis, the determination of the nature of a disease. <u>Webster's New World Medical Dictionary</u> (3rd ed., 2008 at 128).

8

> MUSCULOSKELETAL:...Trigger points positive
> 16/18 fibromyalgia points. Pain with ROM of
> both shoulders...pain and near syncope[2]
> occurs with arms overhead. Pain/stiffness
> with hands and wrists...ROM intact with hips,
> knees, ankles, feet, but with pain (R. at
> 294).
>
> RECOMMENDATIONS...No prolonged sitting,
> standing, lifting, mowing, or vacuuming, and
> Completed disability paperwork (R. at 295).

As this and other courts have repeatedly stated, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999). Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

---

[2]Syncope is defined as a partial or complete loss of consciousness. Webster's New World Medical Dictionary (3rd ed., 2008 at 408).

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia. Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn v. Apfel, 102 F. Supp.2d 1252, 1259 (D. Kan. 2000). Dr. Miller found that plaintiff had 16 out of 18 positive trigger points (R. at 294).

First, the ALJ clearly erred by stating that Dr. Miller did not provide a diagnosis of fibromyalgia (R. at 12). Dr. Miller did in fact provide such a diagnosis (R. at 292, 307).[3] Dr. Miller further found 16 out of 18 positive trigger points, which provides a sufficient basis to diagnose fibromyalgia (R. at 294). There is no medical opinion evidence that disputes or contradicts this finding by Dr. Miller.

Second, the ALJ erred by stating that "there is no testing comprising medical evidence in the record of fibromyalgia" (R. at 12). The case law clearly establishes that Dr. Miller's finding that plaintiff had 16 out of 18 positive trigger points is a

---

[3]Defendant's brief in fact highlights this error by the ALJ. The brief, when arguing that the ALJ gave proper weight to the opinions of Dr. Miller, referenced the ALJ's argument that Dr. Miller never diagnosed plaintiff with fibromyalgia (Doc. 14 at 15). However, defendant's brief previously noted that Dr. Miller recorded that plaintiff had fibromyalgia (Doc. 14 at 6; R. at 307) and that Dr. Miller wrote that plaintiff had been diagnosed with fibromyalgia (Doc. 14 at 7; R. at 292).

medically valid basis for diagnosing fibromyalgia.

Third, the ALJ, in finding that fibromyalgia was not a medically determinable impairment, also clearly erred when he stated that "There must be objective medical evidence of the existence of medical abnormalities" (R. at 12). However, as this court has previously held, "The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity." Priest, 302 F. Supp.2d at 1213.

Later, the ALJ stated that there was little or no objective evidence to support the limitations set forth by Dr. Miller, and that nothing in the objective evidence supports pain at a level that would limit the plaintiff to such a degree (R. at 14). Such findings clearly contradict this court's holding in Priest that there are no laboratory tests to identify the severity of fibromyalgia. As this court held in Priest, negative tests results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213. In Priest, the court further stated the following:

> Considering the above quoted statements as
> well as the medical record here, the court
> concludes there is no substantial evidence to
> sustain the ALJ's finding "that the diagnosis
> of fibromyalgia cannot be medically
> determined." (Tr. 29). Even though the

11

> claimant complained of symptoms consistent
> with fibromyalgia, the ALJ based his
> conclusion that there was no medically
> determinable impairment exclusively on his
> interpretation of Dr. Lies' records and on
> the asserted lack of objective documentation.
> The ALJ reveals his fundamental
> misunderstanding of fibromyalgia in asserting
> that there must be objective documentation of
> this condition (other than the plaintiff's
> complaints) before there is a medically
> determinable impairment. As the Eighth
> Circuit said in Brosnahan [v. Barnhart, 336
> F.3d 671 (8th Cir. 2003)], the "objective
> medical evidence of fibromyalgia" was the
> "consistent trigger-point findings" and the
> plaintiff's "consistent complaint during her
> relatively frequent physicians' visits of
> variable and unpredictable pain, stiffness,
> fatigue, and ability to function." 336 F.3d
> at 678. The medical record in this case, as
> summarized above, is replete with consistent
> trigger-point findings and plaintiff's
> ongoing complaints of pain, fatigue, and
> inability to sleep during her frequent visits
> to physicians and emergency rooms.

Priest, 302 F. Supp.2d at 1214.

Shortly following Dr. Miller's diagnosis of fibromyalgia and a finding that she had 16 of 18 positive trigger points, Dr. Miller offered his opinions regarding plaintiff's limitations. His findings noted that plaintiff had chronic back pain, chronic joint pain and chronic muscle pain (R. at 315). It is clear that the ALJ in this case made the same error as was made in Priest. For this reason, the court agrees with plaintiff's contention that the ALJ did not give proper weight to the opinions of Dr. Miller. The case shall therefore be remanded in order for the ALJ to give further consideration to the opinions of Dr. Miller

in accordance with the case law set forth above.

Plaintiff also argues error by the ALJ in his credibility analysis, his RFC findings, and his step four findings. The court does not need to reach these issues because they may be affected by the ALJ's resolution of the case on remand after giving proper consideration to the opinions of Dr. Miller regarding the diagnosis and limitations caused by fibromyalgia. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 26th day of January 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge